Good morning. Welcome to the 1st District of the Illinois Appellate Court. Will the lawyers who are arguing this case please step up, introduce yourselves, and let us know who you are and where you're from. Good morning, Your Honor. This is Jonathan Krieger for Eddie Rosado. Could you spell your last name for me, please? Sure. K-R-I-E-G-E-R. Thank you, Mr. Krieger. Assistant State Attorney Michael Zhu, spelled Z-H-U for the people. Thank you. I'm sure you both know already that the microphone does not amplify, it simply records, so you need to speak up to make sure we can hear you. Each side has 20 minutes, and the appellant can reserve any amount of time for rebuttal. There is no light, so I will let you know when your time is up. We have read your briefs, so please reserve your argument for the points you wish to emphasize. How much time would you like to reserve for rebuttal? Five minutes, please, Your Honor. Okay, thank you. All right, State Attorney, I'm sorry, Mr. Rosado's attorney. Mr. Krieger, you may begin. I intend to argue only Issue 1 from the brief. The Constitution imposes strict but reasonable limits on traffic stops. During a traffic stop, an officer may question a person about any crime supported by reasonable suspicion. An officer may also address specific safety concerns. A stop becomes unconstitutional if the officer veers from these valid purposes. This is what happened in Mr. Rosado's case. The officers put aside the task at hand to pursue a hunch. Under the law, departures from the proper completion of a mission, of the officer's mission, become unconstitutional, even if the delays only amount to minutes or seconds. The extensive investigations in this case of other crimes made my client's detention unreasonable, so the fruits of that detention should be suppressed. So what's the exact time frame here? How long are we talking about the alleged detention? The alleged delay, the entire encounter? Officer Krieger testified that the time between when he pulled the car over and when the officers and the Medina operator arrived was about five minutes. To me, given the many steps that he took, which are listed in our brief, that seems like quite a, that seems like an understatement of how long that would have taken. But that's the only evidence in the record as to the time frame, correct? And that only covers up until when the Medina robbers came in. There was some testimony during the, excuse me, officers and the Medina robbery arrived. There was some testimony generally that it happened around midnight, but only a trial did Medina testify as to when the robbery actually happened. Don't some of these cases, Illinois cases especially, revolve around the time frame? Five minutes is not too bad, but maybe ten minutes is too long? I disagree. They do, some of them discuss minutes, specifically Baldwin discusses minutes, the Rodriguez case discusses minutes, but in other ones they don't specify the time, and the time is exceedingly brief. In Bunch, the Supreme Court found that a delay for the time that it took to ask for where the people in the car were coming from, the shining of a flashlight was sufficient. In Jones and Perro, the Appellate Court found that, asked a general question about whether there were drugs, whether there were weapons in the car, and requests to consent were sufficient to make the stop unconstitutional. So I think that the takeaway from those Supreme Court cases, plus the U.S. Supreme Court case and Rodriguez v. United States, is that even very brief delays can render a stop unconstitutional. Mr. Krieger, you make an effort to distinguish the fact that the movements that aroused suspicion after they were detained was based on Mr. Molina's movements, right? He's the other passenger versus the defendant, Rosado's movements. I mean, isn't it fair to say, though, that the police can further investigate anybody in the car for any complicit activity? If they have reasonable suspicion to hold them, to question them, then yes, I think that that's accurate. In this case, the only testimony, once the officer had pulled the car over for a seatbelt violation, that was the only thing that they could investigate. As Officer Krieger was approaching the car, he saw Mr. Molina put something into his seat pocket, which allowed him to briefly put the mission on hold, understandably, because he felt that the object that was being put in the seat pocket was a weapon. I understand, but you're making a distinction between the defendant and Mr. Molina. I mean, is that a distinction of any relevance? I think it is in terms of determining reasonable suspicion. Reasonable suspicion has to do with whether you have specific articulable facts that the defendant committed a crime. And in this case, I don't think that Mr. Molina's putting an object into a seat pocket indicated that any crime had occurred. But even if it did, it would only relate to Mr. Molina. It wouldn't relate to our client who's sitting in front of me. You didn't also testify there were furtive movements, which oftentimes policemen say when they give testimony. There was a furtive action by him hiding or putting something over there in the car. I don't remember whether he used the specific word furtive or whether that was something that the circuit court found. But he said that he took an object and put it into the seat pocket as he was approaching. And was it reasonable for safety reasons that he look into that police pocket and see what was in there? Absolutely. Or the car pocket?  We don't dispute that Officer Krieger could look inside the pocket. But once he looked inside the pocket and saw that the object that he thought was a gun was in fact a cell phone, any specific concern about his safety dissipated. But didn't he notice that there was something on one of the objects that had a name on it? He did, but only after he reached in. But again, I mean, he reached in, he looked at something, and he saw that it was a name on it. What was wrong with him saying to the defendant, is this your cell phone? Well, first of all, he didn't have the right to go in there. Because once he saw, he didn't have the right to reach him, because once he saw that what he thought was a gun was in fact a cell phone, his safety concern dissipated. And the only question was whether, how were they going to process the seatbelt fire? So what case do you have that's specific on points? Is it once a police officer sees, he can't go in and take it? I think the case that we cited, that once an officer's safety concern has dissipated. Well, did he say his safety concern was dissipated, the officer? No, the officer said that he was still in fear because he was outnumbered. But no one has argued that you have an automatic right to search a car just because the officer is outnumbered. And I should point out that all this happened after all the occupants of the car were handcuffed and held outside of the car so they couldn't reach him. Why didn't the defendant say, oh, it's my phone or just a phone? He said what phone? Did he not? No, not the defendant. That was Mr. Molina. All of the investigation happened concerning, and the initial investigation happened concerning Mr. Molina. According to my reading of the record, and I might be mistaken, I don't think Mr. Mozilla was asked specifically about the cell phone, only Mr. Molina was. Let me answer this question. The exclusionary rule on the whole is really in place to deter police misconduct, is it not? That's right, Your Honor. And what's the police misconduct that occurred here? The police misconduct that occurred here is that the officer went on a fishing expedition, that the officer pulled, it was an admittedly pretextual stop, which is legal, but which, as the cases we cited, can be taken into account in determining the reasonableness of the stop. It's the totality of the circumstances. That's right, Your Honor. And so in this case, the misconduct was that the officers went on a fishing expedition, that they found these objects which were not contraband, which were not weapons, which were not clearly inculpatory, and they decided that they would find out if any crime had occurred. Counsel, let's say the officer went in there and he found it was a wallet full of money and credit cards and not the name of anyone in that car. Do we should just ignore that and put that back in the vehicle? I don't think that the officer, as I said, I don't think that the officer should have looked in, but even if they were, he was, I'm sorry, could have looked in, but couldn't have reached in and taken it out. He certainly couldn't have examined it. If the officer's only concern was safety, he could see that a wallet wasn't going to pose a specific danger. A knife folded up in the wallet? I mean, who knows? Sure. That's fine. He could look maybe into the area where the bills are, but we don't allow officers to conduct full car searches based on speculation. It needs to be a reasonable concern. Well, again, he said there were furtive moments. Maybe that's trial courts, but there was something going on in the backseat and the guy put something in the side. I believe all it was was that he put something into the seat pocket. There are good reasons that people wouldn't want to be seen with something that might resemble a gun, even if it weren't a gun, as a police officer approached. Could the argument be made this was good police work on the part of the police officer to look at that and see that that name was connected to no one in the car and find out there was a robbery just a short time before? Wouldn't that be considered good police work by some people? It would be good police work to the extent that eventually it made an arrest, but that's going to be the case in any case involving a suppression motion, that something was seized, and the question is whether it was seized legally. To answer your question, I think that good police work is work that not only gathers evidence, but that complies with the Constitution. And in this case, the investigations did not. I think that the law in this area is remarkably clear. A long line of ornery Fourth Amendment cases find that brief delays can make a detention and reasonable brief delays to investigate other crimes. And in the Rodriguez case last April, the U.S. Supreme Court affirmed that there's no de minimis rule. So if the question is about whether it was five minutes or ten minutes, seconds, minutes count. They make a difference. The U.S. Supreme Court in Rodriguez also specifically barred on-site investigation of other crimes, which is what happened in this case. There is a dispute between the parties as to whether Officer Kruger could have reached inside the pocket, whether he was allowed to reach inside the pocket. And the state claims that based on contradictions, alleged contradictions in his testimony, that the trial court's finding that he needed to reach in should be credited. But by my reading of the record, there were no contradictions. He testified clearly in an unprompted way that when he looked inside, he could tell that what he thought was a gun was, in fact, a cell phone. All he saw inside was a cell phone and jewelry. Mr. Kruger, I'm sorry. I want to go back to one of the points that Justice Conner is making. You say to People v. Jones for the proposition that you can't seize objects that are immediately incriminating in nature. What is not incriminating about jewelry or cell phones that the suspects have indicated don't belong to them? What is incriminating about it, I would say? I mean, there are many reasons that an object not associated with anyone could be in a pocket. We don't know. Officers didn't know at the time whose car it was. It could have been left there. Do you think it's reasonable, if you were being questioned by the police, to not want to exculpate yourself? In other words, you'd say, oh, that's my phone. That's my jewelry. That's my girlfriend's signet ring. That's my mother's ring. I'm sorry. I don't understand your question. My question is, when you say that it's not incriminating in nature to have the jewelry, it could belong to anybody, don't you think that it is incriminating by virtue of the circumstances surrounding the investigation? When the police ask, what are your names? Why does this ring, you know, have a different initial or indicate a different person's name? Well, as I said, I believe the question was only to Mr. Molina about that. And so any answers that were evasive on his part would be only incriminating with regard to him. And all of us decided that. And so if there's silence on all the other occupants' part, it doesn't matter? It's not as incriminating? Yes, Your Honor. I mean, the question is whether there's any specific – Silence is incriminating? Doesn't he have a right to be silent? That's right, Your Honor. He doesn't need to go on his own if he's questioned. You have police officers, they're worried about their safety. He thought there might be a gun. He makes an investigation into the pack and they don't find a gun. No weapon whatsoever. Their safety issue is resolved.  The only duty that they are under to answer is related to issuing the ticket for the CEPOC violations. And the questions that were asked here, whether they were in a gang, questions about the specific property, were unrelated to that. The State's main argument is that there was reasonable suspicion based on what was found in the CEPOC's pocket. And as I've argued, the officers didn't have a right to reach into the CEPOC and they didn't have a right to examine those objects and thus learning the name on the ring. But even if the contents of the pocket are considered, they don't amount to reasonable suspicion. All they were were a phone and two pieces of jewelry. These were innocuous objects. There was no reason to think that they were contraband or the proceeds of a crime. And they certainly weren't weapons. Counsel, can I ask you, the Rodriguez case was a dog sniff case, was it not? That's right, Your Honor. And that's certainly not the ordinary incident of a traffic stop. A dog coming out and sniffing to see if there's any drugs. Not in Chicago. I think in some places they have dogs sniffing. Well, that's what they say in Rodriguez, though. They say that's not an ordinary incident that occurs during, yeah. So isn't this an ordinary incident that occurs at a traffic stop where an officer would look to protect his safety and to look into that? I mean, I'm trying to distinguish this circumstance versus Rodriguez. And it is a different factual situation. Of course. But there are certain principles that can be drawn from that. When Rodriguez talks about ordinary incidents, it means getting the person's name, running a warrant check, getting their license, getting their insurance, that sort of thing. But that doesn't exclude a safety check of the vehicle. No, and as I've said, well, not a safety check of the vehicle. I disagree with you about that. I think you need to have a specific concern. You have to have a specific reason to feel for your safety in order to do that. As I said, we don't object to the fact that Officer Krueger looked inside the seat pocket, but that once he knew that it was, in fact, a cell phone. Mr. Krueger, your time is almost up. Would you like to finish up with any other comments you need to make? And I'll check and see if the judges have any other questions. Thank you. Since the officers in this case gave up their mission to pursue a hunch, the fruits of the unlawfully prolonged detention should be suppressed. And since the state couldn't prove its evidence without those fruits, Mr. Rosado's conviction should be reversed outright. Thank you. Well, one moment. Reversal outright. Are you saying that all evidence following this allegedly prolonged stop is therefore suppressed? That's right, Your Honor. What if the police had a ‑‑ there was a victim here of a robbery? That's right, Your Honor. Okay. And what if the victim has ID'd this individual? In a subsequent trial, that victim couldn't ‑‑ there couldn't be testimony from the victim ID? Based on the identification in this case, I don't think that the state could go ahead If the evidence was ‑‑ if the jewelry and cell phone were not able to be introduced, all they would have would be a bare identification. If you look at the trial testimony ‑‑ We don't know that. We don't know what evidence is out there. I mean, did maybe the defendant enter into a confession? I have no idea. Well, I think we do know, based on the trial, and that's the only record that we have, I don't see how the state would withhold something without presenting, withholding a trial. I would assume that would have been the best case forward. Thank you. Mr. Su. Assistant State Attorney Mike Su, ZHU for the state. On August 28th, 24th and 25th, around midnight, Armando Medina, a 21‑year‑old college student, was robbed and beaten by the defendant and his associates. Eight blocks away and almost approximately 40 minutes later, the defendant was pulled over in the same car by officers and victims of stolen items, including a ring with his name on it, a broken chain and cell phone, were recovered during a traffic stop. Later, the defendant and the items were identified in a show up. Now, the defendant claims that this conviction must be reversed because that traffic stop was somehow extended improperly. They say that the officers went on a fishing expedition because of a hunch. However, that is clearly not the legal characterization that fits here. This is not a fishing expedition. The officers had a valid officer safety concern, which led to reasonable suspicion of a robbery. And to see this, we have to go into the details a little bit. During the traffic stop, the officers were on an unrelated robbery mission. They recognized the defendant in the front passenger seat. They recognized that nobody was wearing a seat belt. Specifically, they knew the defendant as a Land King gang member. They recognized him from previous arrests. They knew they were in 2-6 territory during a gang war. In this circumstance, officers pulled over for the seat belt violation and ultimately wrote a ticket for that seat belt violation. Nobody contests the legality of the traffic stop. Furthermore, the defendant does not contest some type of valid officer safety search of the front back pocket because when Officer Pruger was approximately three feet from the car, he saw the backseat passenger side, Raul Molina, place what looked like the butt of a handgun into the seat pocket. That is uncontested. The defendant does not contest the right to search that pocket to some extent. However, the defendant claims that after Officer Pruger could tell that there was no gun in that pocket without retrieving the items and also claims that any further observation of those items somehow constitutes a phishing expedition. Now, this is incorrect for two reasons. First of all, the appellate record could be read in a way that is possibly contradictory, but we're not sure. On the cross-examination, Officer Pruger clearly says that he had to physically retrieve the items to tell what was in there. However, the despondent fact is that the trial court clearly in its ruling on the motion to suppress held that the Officer Pruger needed to go physically into the pocket to retrieve those items. If that's the case, then the Officer Pruger was lawfully in possession of the ring, the cell phone, and the chain. In the reply brief, the defendant notes the fact that on redirect, there's some talk about Officer Pruger could tell it was not a gun. However, that's not the question. The question is, was there – the Officer Pruger has a right to make 100% sure that he was safe and to completely search that pocket. That is an officer safety search. He doesn't have to always be looking out for possible violations. He has a right to make sure that he's safe. Mr. Su, though, I mean, if we don't establish some sort of a threshold, what's to prevent the officer from continuing to search the entirety of the car? After all of the occupants have been, you know, handcuffed, detained, and he is reasonably assured of his own safety. Well, I think that's not clear in this case. Reasonableness under the circumstances is the ultimate inquiry, right? And in this case, the officers were still outnumbered four to two. This was just a seat pocket. It did not spill beyond the confines of where the gun might have been. And furthermore, this all happened probably very quickly. There's no testimony as to how long it took to go from the initial retrieving of the cell phone to taking out all the items, but it is not much of an expedition. This probably happened very quickly. And because of that, this is reasonable. This is not a massive invasion of privacy. This is just an officer making sure there was no gun in a seat pocket. That is a reasonable amount of time and scope of an investigation. In the case of People v. Starks, another case where there was a reasonable suspicion for a shooting, the court held that a reasonable terry stop could be ten minutes long and involve bringing a victim over for a show-off, which, again, could take longer or shorter. However, in this case, we're talking about a very brief search of a very small part of the car, and that, I think, is a clearly reasonable scope for an officer safety search. Mr. Zhu, I'm going to ask the same question I asked Mr. Krieger, and that is how can you attribute the reasonable suspicion from actions of Mr. Molina to Mr. Rosado, just merely by the fact that he is a member of a gang and he's known to the police? No, there's a number of other circumstances, but I think once we're talking about reasonableness in a terry stop, we're looking at the government's actions and whether they were reasonable as a whole. Now, the question is not so much whether or not there's reasonable suspicion for each individual person, and if not, you have to let them go, even though they've been just stopped five minutes ago. No, the question is whether or not the officer's entire investigation was reasonable, and based on the circumstances, which go far beyond a known gang membership, they were. This was midnight. They had a broken chain, which indicates violence. We have a ring that does not match the occupant's, and a ring, a cell phone, and a chain, and that indicates the valuable that somebody might have taken from them. And this suspicion was heightened. It was not dissipated by the lawful investigation that immediately happened after. Furthermore, they saw the sort of placing of the objects. Now, what did the officers do immediately after? They asked Raul Molina, what were these items? That is a very brief investigation. I think the standard for a terry stop is that the investigation has to be tailored to quickly resolve the suspicion if possible. Asking about what they were and asking the defendants' names, which is lawful under a separate case law under Habel and the statute, this is a very quick investigation that could potentially resolve this issue. The defendants might have been able to come up with a reasonable explanation, but they did not. After they determined there was no handgun or dangerous weapon or deadly weapon anywhere in the vehicle, in that back seat pocket, whatever it is, what was the occasion that caused them to continue on with further investigation? Isn't it clear that at that juncture they should have written up the ticket for the seat belt and been on their way? No, because if the officers, based on what they're lawfully allowed to see under the case law, they're allowed to make a reasonable investigation under Terry. That's police work. That's what they're paid to do. If the officers find a gun, they found a ring and they found a cell phone, whatever, what's suspicious about that? Well, again, the circumstances of the items, you have a ring, a broken chain, which indicates violence, and a cell phone. These are somebody's valuables. They lawfully determined that they did not belong to anybody in the vehicle. They also observed Raul Molina furtively place it in the pocket and then deny they were even there. This is a reasonable suspicion of a robbery, and one of the reasons you know it's reasonable is that that is exactly what came to mind in the officer's mind upon viewing the circumstances. And these are officers. They're paid to do this. This is their job. So if they find a reasonable suspicion of a robbery after lawfully detaining somebody for a traffic stop and then having a lawful officer safety search, they have a duty to move forward with the investigation and conduct a reasonable Terry investigation, which they did so because what they did next, which is call the name of the victim over the radio, that's not an intrusive search. That's a very quick way to resolve whether or not this was a real crime they were looking for. And it so happens that in five minutes, which is less than the ten minutes in Starks, they were able to develop probable cause by making contact with the officers in the robbery arrest. So, again, yes, this was a traffic stop at first, but once officers have reasonable suspicion staring them in the face, this is their job to investigate further, and they did so in a constitutional manner by being very unintrusive. They just asked some questions about the items and made a radio call. That's a reasonable scope of investigation under Terry. Now, once the new officers arrived, they had probable cause because the new officers were able to identify that this was indeed a real robbery that happened very close, very recently, and officers at that time had a right to arrest the defendant. If we were to send this back for rehearing or remanded at an attenuation hearing, is there other evidence available by the state which would allow a prosecution to proceed, such as a confession, such as eyewitness testimony? Although we did not brief the issue, I believe that if the Doctrine of Inevitable Discovery does apply here, because even without the stop, let's say the officers did not follow up on the reasonable suspicion. Officer Pruger would have been able to see the name on the ring. Officer Pruger recognized the defendant in the front passenger seat through prior arrests. Meanwhile, the victim was known to other officers. This is something that would have come together at a later time. However, we did not brief this because there's absolutely nothing unlawful about the way Officer Pruger conducted his investigation, so there's no need to suppress it. However, based on what all the officers knew at the time, we had a known victim with a known name with a known item description. Officer Pruger, even under defendant's view, had a right to at least look at the items. They knew the defendant by name. This would have been put together eventually. However, we're not arguing this because there's absolutely nothing unconstitutional about the way Officer Pruger acted. You did good police work. The exclusionary rule exists to suppress police misconduct. The police misconduct here is not misconduct. The officer was just doing his job by following up on reasonable suspicion. That's what they're paid to do. To deter that through exclusionary rule, I think, would be to misuse the rule against its proper purpose. And for those reasons, the state believes that the evidence should not be suppressed and the defendant's conviction should be affirmed. Any questions? No. Thank you, Mr. Chief. Your battle. I have three points to add on this. The first is that the housing council points out that the court made a finding that Officer Pruger needed to reach inside of the pocket in order to make sure that there were no weapons in there. As was argued in the briefs, the court at that time was applying the wrong standard for assessing the credibility of the witnesses at trial. There was no guns in favor of either side during the suppression hearing, and she found that the state evidence needed to be taken in the utmost favorable to the state, which was an error that tainted her factual findings. In addition, based on this testimony, I think that her finding that he needed to go in would nonetheless be reversed or vacated, not deferred to under the manifest error standard because Officer Pruger's clear testimony, unprompted, was that when he looked in, he could see that the parent gun was in fact a cell phone. My second point is that the idea was brought up that reasonable suspicion needs to be determined in terms of the entire investigation. And I replied briefly, cited People v. Ruffin, for the idea that suspicion needs to be focused on the defendant, and that makes, I think, a lot of sense. We don't want officers pulling cars over and detaining everyone where they investigate just one person. At any point, if the officers felt that someone was an abuser, they should tell them, say, you're free to go. In this case, everyone was handcuffed and put outside of the car. My last point is that opposing counsel argues that the call over the radio wasn't intrusive. I want to emphasize that the investigative actions that delay, that prolong the completion of an officer's mission do not themselves need to be intrusive, do not themselves need to be Fourth Amendment violations. The cases involving dog sniffs, questions posed to suspects, those all involve investigative actions that were not intrusive, that don't themselves violate the Fourth Amendment, but because they delayed the stop, were found to make the detention unreasonable. Your Honor's heard. Thank you. Thank you. I want to thank both sides' attorneys for their excellent job  The court will take it under writing.